UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Federal Deposit Insurance Corporation, Beal Bank Nevada, and Republic Bank | Civil No. 09-1937 (DWF/JSM) |
| Plaintiffs and Intervenor Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Gramercy Club of Edina, et al., | |
| Defendants. | |

Brian F. Leonard, Esq., Edward W. Gale, Esq., Matthew R. Burton, Esq., and Thomas C. Atmore, Esq., Leonard, O'Brien, Spencer, Gale & Sayre, Ltd., counsel for Federal Deposit Insurance Corporation.

Bradley N. Beisel, Esq., Beisel & Dunlevy, P.A., Erin A. Oglesbay, Esq., and Michael A. Rosow, Esq., Winthrop & Weinstine, P.A., counsel for Beal Bank Nevada.

Bradley N. Beisel, Esq., Beisel & Dunlevy, P.A., and Larry D. Espel, Esq., Greene Espel, PLLP, counsel for Republic Bank.

Jacob C. Hendricks, Esq., Lee A. Lastovich, Esq., and Marnie E. Fearon, Esq., Felhaber Larson Fenlon & Vogt, PA, counsel for Defendants Gramercy Club of Edina and Individual Defendants.

Donald R. McNeil, Jr., Esq., Coleman Hull & van Vliet, PLLP, counsel for Defendant Frana Companies, Inc.

## INTRODUCTION

This case involves two loans made by Bank First to finance the purchase of a 4.45-acre parcel of land and the construction a 126-unit housing cooperative on that land.

This matter is before the Court on a Joint Motion for Summary Judgment brought by Beal Bank Nevada ("BBN") and Republic Bank ("Republic"). Through that motion, BBN and Republic seek a determination of lien priority concerning a mechanic's lien filed by Frana Companies, Inc., formerly known as Frana and Sons, Inc., ("Frana").[1] This matter is also before the Court on BBN's Motion for Summary Judgment concerning the Type-B owners. Republic and the Federal Deposit Insurance Corporation ("FDIC") submitted separate summary judgment motions joining BBN's second motion. For the reasons set forth below, the Court denies the motions.

## BACKGROUND

Because of the complicated history associated with this case, the following is a summary of the facts relevant only to the motions currently before the Court. The Gramercy Club of Edina ("Gramercy") is a 126-unit cooperative housing community for individuals age fifty-five years and older. Gramercy is located near 70th Street and Metro Boulevard in Edina, Minnesota. Tim Nichols formed Gramercy, and through Cooperative Communities, LLC, managed Gramercy. The individual defendants in this case are persons who occupy 36 of the 126 Gramercy units. In connection with the purchase of their units, each individual received a Partial Release of Mortgages ("Release"). With respect to 32 units, individuals received signed Releases, and with respect to 4 units, individuals received unsigned Releases. The parties refer to

---

[1] BBN and Republic are jointly represented by Mr. Beisel for the limited purpose of defending the banks against Frana's mechanic's lien.

individuals who have signed releases as Type-A owners and to those who have unsigned releases as Type-B owners.

In November 2005, Bank First loaned Mr. Nichols' mother, Nancy Nichols through an entity named Nine Mile Partners, LLC, $4,750,000 for the purchase of the 4.45-acre parcel. Ms. Nichols in turn gave Bank First a mortgage on the property. The documents associated with this transaction and subsequent related transactions and rights arising thereunder will collectively be referred to as Note B. In early December 2005, Bank First recorded Note B in the Hennepin County Recorder's Office and in the Hennepin County Registrar of Titles. Sometime later, Gramercy purchased Note B from Nine Miles Partners, LLC. At some point, Mr. Nichols, on behalf of Gramercy, hired Frana as the general contractor for the project. In the fall of 2005, Frana removed two mature trees from the property, but left the stumps in the ground. Frana also placed two trailers (one for sales and one for construction) and a portable toilet on the property. For the sales trailer, Frana built an access ramp, and it provided both trailers with electricity.

Prior to Bank First loaning Gramercy money for construction of the project, Bank First employees and a loan closer from First American Title Insurance Company (Bank First's title insurer) exchanged e-mails related to whether priority of Bank First's mortgage was broken by Frana's delivery of the trailers to the property. Later, senior counsel for First American Title Insurance Company and the senior vice president of one of Mr. Nichols' companies discussed why the trailers were on the property, namely for sales and not construction purposes.

On March 23, 2006, Bank First loaned Gramercy $34,205,000 for the construction of the 126-unit housing cooperative and, in exchange, Gramercy gave Bank First a mortgage. The documents associated with this transaction and subsequent related transactions and rights arising thereunder will collectively be referred to as Note A. On March 24, 2006, Bank First recorded Note A in the Hennepin County Recorder's Office and in the Hennepin County Registrar of Titles. On that same day, Mary Ryman of First American Title Insurance Company made a priority inspection of the property and, according to her, determined that no work or improvements had begun on the property.

At some point, Bank First sold participant interests in Note A and Note B to various lenders, including BBN and Republic. Bank First then began acting as a servicing and administration agent for the participating banks. On March 25, 2008, Frana recorded a mechanic's lien statement against the land in the amount of $1,079,165.52 for its work on the project. The lien statement states that Frana had performed work on the project from March 29, 2006 through December 17, 2007.

In July 2008, Bank First commenced a foreclosure action in Hennepin County State Court related to disputes involving Notes A and B. As part of that action, Frana sought to foreclose on its mechanic's lien. Shortly thereafter, Bank First moved for summary judgment on many issues, including whether its mortgage had priority over Frana's mechanic's lien and seeking a priority determination with respect to the Type-B owners. On January 23, 2009, the Honorable Mel I. Dickstein issued a summary judgment order. In that Order, among other things, Judge Dickstein denied Bank First's motion for summary judgment with respect to Frana's priority, concluding that genuine

issues of material fact existed as to whether Frana's activities in the fall of 2005 were sufficient to give Bank First notice of Frana's priority right. Judge Dickstein also concluded that genuine issues of material fact existed with respect to priority issues related to the Type-B owners.

In July 2009, Bank First failed, and its assets, including Bank First's rights in Notes A and B, were transferred to the FDIC. Shortly thereafter, the FDIC removed this action from Hennepin County State Court to this Court. Although the record is not clear, at some point, the FDIC assigned its rights in Note A to BBN and its rights in Note B to Republic. The parties have since conducted additional discovery. The moving parties now assert that they are entitled to summary judgment because additional discovery has resolved any factual issues indentified by Judge Dickstein. As a result, there are two main summary judgment motions before the Court. The Court will discuss each in turn.

## DISCUSSION

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

5

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

I.  **Frana's Mechanic's Lien**

BBN and Republic seek a determination of lien priority concerning Frana's mechanic's lien. Their motion is limited to the issue of whether Note A was recorded before the first actual and visible improvement to the ground. In other words, the resolution of this dispute depends on when Frana's lien attached to the real property. If Frana's lien attached prior to March 24, 2006 (the date Bank First recorded Note A), then Frana's lien has priority over Note A. If Frana's lien attached on March 29, 2006 (the date reflected in Frana's lien statement), then Note A has priority over Frana's lien. BBN and Republic's motion does not seek adjudication of other priority defenses, counterclaims, and affirmative defenses.

Generally, every conveyance of an interest in real property must be recorded in the office of the county recorder or registrar of titles where such real estate is located. Minn. Stat. §§ 507.34, 508.25. If not, such conveyances are void as against any subsequent good faith purchasers. *Id*. A mechanic's lien, however, attaches to the land "from the

time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had actual notice thereof." Minn. Stat. § 514.05, subd. 1. "As against a bona fide purchaser, mortgagee, or encumbrancer without actual or record notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground . . . ." *Id.* The Minnesota Supreme Court explained that "in order to have priority over a mortgage duly recorded, the material or labor furnished for the improvement must represent an actual beginning of the improvement on the ground and it must be visible; that is, a person using reasonable diligence in examining the premises must be able to see it." *Reuben E. Johnson Co. v. Phelps*, 156 N.W.2d 247, 251 (Minn. 1968.) Once a visible improvement on the ground has begun, a mortgagee is deemed to have notice of a mechanic's lien and stands in the same position as an owner for the purposes of priority. *Id.* To constitute an actual and visible improvement, there must be a "permanent addition to or betterment of real property that enhances its capital value." *Kloster-Madsen, Inc. v. Tafi's, Inc.,* 226 N.W.2d 603, 607 (Minn. 1975). Generally, such issues are questions of fact. *Id.* However, a court can enter summary judgment if it determines that there are no genuine issues of material fact with respect to whether the beginning of improvement is visible or not. *See, e.g., Westside Equip. Installers, Inc. v. North of Sixty Flying, Inc.*, No. A06-1618, 2007 WL 2107197, * 5 (Minn. Ct. App. July 24, 2007).

BBN and Republic assert that neither the installation of the two trailers nor the removal of two trees establishes that an actual and visible improvement was made to the

property prior to March 24, 2006. They assert that Frana's work in the fall of 2005 was merely preliminary and not sufficiently visible to give Bank First notice. Frana responds that, at minimum, genuine issues of material fact exist to preclude summary judgment. Viewing the facts in the light most favorable to Frana, the Court agrees with Frana. The discovery since Judge Dickstein's order did not resolve any factual disputes. Specifically, among other matters, there are genuine factual disputes with respect to the purpose and status of the trailers, the removal of the trees, and the implications flowing from the e-mail exchange and visual inspection.[2] Accordingly, the Court denies BBN and Republic's motion with respect to this issue.

**II.     Type-B Owners**

In a second summary judgment motion, BBN seeks a priority determination concerning the Type-B owners. Specifically, BBN requests that the Court find that Note A is entitled to priority vis-à-vis any interest the Type-B owners may claim in the property. Republic and the FDIC join BBN's motion.

In his January 23, 2009 Order, Judge Dickstein addressed the Type-A and Type-B owners' argument that Bank First (BBN now stands in Bank First's shoes for the purposes of this motion) should be promissorily estopped from claiming that the owners lost their interest in the real estate because Bank First drafted and delivered the Releases, which the owners reasonably relied upon. Promissory estoppel is an equitable doctrine

---

[2]     In their reply, BBN and Republic also rely on language in the contract between Frana and Gramercy to support their motion. That contract language is subject to a motion to amend the pleadings that is currently under advisement by Magistrate Judge Mayeron. (Doc. No. 139 at p. 4, n.1.)

8

which implies a contract where one does not actually exist. *Martens v. Minnesota Min. & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000). To succeed on a promissory estoppel claim, the owners must establish that (1) Bank First made a clear and definite promise; (2) Bank First intended to induce reliance on that promise; (3) the owners in fact relied on that promise to their detriment; and (4) it would be unjust not to enforce the promise. *Id*.

With respect to those owners who had signed releases, Judge Dickstein accepted a proposal by Bank First that allowed Bank First to foreclose on the Type-A owners' property interests but also protected the Type-A owners interests with a "ride-through." With respect to those owners who had unsigned releases, Judge Dickstein noted that Bank First contended that it did not receive any money from the Type-B owners and that the Type-B owners asserted that they had paid for their occupancy interests and received releases, although they were unsigned. Judge Dickstein concluded that he did not have sufficient information with respect to the Type-B owners:

> Although the parties make cross motions for summary judgment and Gramercy raises a similar counterclaim, the Court is not satisfied that it has all the information it needs to rule at this juncture. Information related to whom the Type B Individual Owners paid their money, whether the person or entity had actual or apparent authority to issue releases on behalf of [Bank First], and whether the Type B Individual Owners reasonably relied upon the Unexecuted Releases, have not been addressed to the Court's satisfaction. The Court finds there are issues of material fact that remain outstanding and which preclude summary judgment . . . .

(Doc. No. 143, Ex. B at 20 (footnote omitted).)

Since January 2009, the four Type-B owners have been deposed, and based on that deposition testimony, BBN now moves for summary judgment. BBN explains that under the loan agreement between Gramercy and Bank First, Gramercy was required to submit

9

a certain amount of money to Bank First in order to receive a partial release of the mortgage from Bank First. According to BBN, Gramercy did not pay the release price to Bank First for the Type-B owners and instead only submitted the closing documents for those owners without accompanying funds. As a result, Bank First did not execute releases for the Type-B owners. Instead, the record appears to show that Nichols Financial, an affiliate of Gramercy, prepared unsigned partial release forms and gave those forms to the Type-B owners in May 2008. According to BBN, the Type-B owners' deposition testimony establishes that (1) they paid their money directly to Gramercy; (2) representatives of Gramercy had no actual or apparent authority to issue Releases on behalf of Bank First; and (3) none of the Type-B owners relied on the unexecuted Releases when making the purchase of their units. Therefore, based on the Type-B owners' deposition testimony, BBN asserts that there is no genuine issue of material fact with respect to their promissory estoppel claim because those owners cannot establish the required elements of such a claim. Moreover, relying on a law-of-the-case argument based on Judge Dickstein's order, BBN asserts that the owners' claim for promissory estoppel is the only remaining issue with respect to the Type-B owners and that those owners are precluded from asserting any new defenses to BBN's request for a priority determination.

The Type-B owners respond that summary judgment is inappropriate because the record establishes that there are factual issues related to the question of agency. The owners assert that Bank First violated its own internal policies and improperly delegated all of its responsibility for the closing and funding to Gramercy. They also state that

Bank First knew that Mr. Nichols was improperly using the owners' funds for other purposes but that it allowed Mr. Nichols to do so for some time. The Type-B owners further assert that there are other remaining factual issues related to their other equitable defenses which have yet to be conclusively decided. Finally, the Type-B owners assert that under the doctrine of election of remedies, BBN is precluded from pursing its claim against the Type-B owners.

Viewing the evidence in the light most favorable to the Type-B owners, the Court concludes that there are genuine issues of material fact that preclude the entry of summary judgment. At a minimum, the Court finds that there are genuine factual disputes with respect to the issue of agency and Bank First's role in the closing process. Accordingly, the Court denies BBN's, Republic's, and the FDIC's motions on this issue.[3]

## CONCLUSION

This case was commenced in Hennepin County State Court on July 2, 2008. Judge Dickstein entered his summary judgment order on January 23, 2009. Shortly thereafter, Gramercy filed for bankruptcy protection, and the state district court action was stayed until July 6, 2009. On July 17, 2009, the State of South Dakota Department of Revenue and Regulation, Division of Bank, appointed the FDIC as Bank First's receiver, and the FDIC took on Bank First's interest in Notes A and B. (Doc. No. 8.)

---

[3] Given the jurisdictional concerns discussed below and especially considering that those parties standing in the shoes of Bank First caused this action to be removed to this Court, the Court will delay addressing the parties' arguments related to whether the Type-B owners are able to raise other equitable defenses that were not raised in state court and how the law-of-the-case doctrine applies to this matter, if at all.

On July 24, 2009, the FDIC removed this action from state court to this Court pursuant to 12 U.S.C. § 1819(b)(2)(B), which gives the FDIC the option to remove a matter to the appropriate federal district court. (Doc. No. 1.) On that very same day, the FDIC sold all of its rights in connection with Note A to BBN. (*See* Doc. Nos. 47, 48 113, and 123; *but see* Doc. No. 84 at 3 "On or about October 16, 2009 the FDIC assigned the Construction Mortgage[4] to Beal Bank Nevada through that certain Assignment of Note and Other Documents (Mortgage) recorded on November 25, 2009 with the Hennepin County Recorder . . . and the Hennepin County Registrar of Titles.") On August 3, 2009, the FDIC filed a motion to substitute itself as the real party-in-interest for Bank First and sought a 90-day stay in accordance with 12 U.S.C. § 1821(d)(12)(A)(ii). (Doc. No. 5.) In that motion, the FDIC never mentioned that it had sold its interest in Note A to BBN. (*Id.*) Magistrate Judge Mayeron granted the FDIC's substitution motion on August 27, 2009. (Doc. No. 32.)

On September 24, 2009, Republic filed a motion to intervene, in which it explained that the FDIC had sold its interest in Note B to Republic. (Doc. No. 37.) The record is not clear, however, as to when this sale took place. On October 20, 2009, BBN filed a motion to substitute itself for the FDIC. (Doc. No. 45.) In connection with that motion, BBN noted that it understood that the FDIC had sold Note B to Republic Bank and that the FDIC no longer had any rights in the notes. (Doc. No. 48.) Magistrate Judge Mayeron granted both Republic Bank's intervention motion and BBN's substitution

---

[4] BBN and Republic define "Construction Mortgage" to be the mortgage that Gramercy gave to Bank First in the amount of $34,205,000. (Doc. No. 84 at 1.)

12

motion on November 10, 2009. (Doc. No. 71.) Pursuant to the November 10 Order, however, the FDIC continued to be listed as a plaintiff in this action.

The Court stated in its November 2, 2009 Order that it had serious jurisdictional concerns about this case. (Doc. No. 66 at 5.) Moreover, the Court is aware that the parties have noted these jurisdictional issues at hearings before Magistrate Judge Mayeron, and the issue was also mentioned at the March 31, 2010 hearing. This matter is set for trial on August 2, 2010. The time has come for any jurisdictional questions to be resolved.

Given the caliber of representation in this matter, the Court assumes that this case's year-long life in federal court has been jurisdictionally proper at all times and that this Court has not been used to delay resolution of this matter, to generate unnecessary fees, or to protract this litigation. Nevertheless, given the impending trial date and the procedural history in this matter, the Court respectfully orders each party to file a letter brief, no more than five pages in length, addressing whether this Court has (and will continue to have) jurisdiction in this matter and whether an early settlement conference would be helpful. The FDIC, BBN, and Republic should also discuss the timeline associated with when Notes A and B were transferred from the FDIC to BBN and Republic, what remaining "paperwork" needs to be completed by the FDIC, and why the "paperwork" (regardless of whether it is "contentious" or not) has not been completed to

date.[5] The Court reserves the right to order the FDIC to complete any remaining "paperwork" within a specific amount of time.

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1. Beal Bank Nevada and Republic Bank's Motion for Summary Judgment (Doc. No. [82]) is **DENIED.**

2. Beal Bank Nevada's Motion for Summary Judgment (Doc. No. [111]) is **DENIED.**

3. Republic Bank's Motion Joining in Beal Bank Nevada's Motion for Summary Judgment (Doc. Nos. [116] and [145]) is **DENIED**.

4. The Federal Deposit Insurance Corporation's Motion Joining in Beal Bank Nevada's Motion for Summary Judgment (Doc. No. [121]) is **DENIED**.

5. Within one week from the date of this Order, the parties are instructed to file individual letter briefs on CM/ECF, consistent with this Order.


Dated: May 28, 2010          s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        United States District Judge

---

[5] In response to questions from the Court concerning the FDIC's status, the parties simply stated that there was "paperwork" to be completed and that it was "contentious." No further explanation was given.